UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs                                                    Case No: 06-20366
                                                    Honorable Victoria A. Roberts

**ANTHONY HACHEM, ET AL,**

    **Defendants.**
_____/

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS INDICTMENT**

**I.    INTRODUCTION**

    This matter is before the Court on Defendant Sarah Adams' Motion to Dismiss Counts of the Indictment for Failure to State an Offense, which is joined by Defendants Anthony Hachem, David Varner, and Brett Hanke. Defendants' motion was referred to Magistrate Judge Paul Komives for a Report and Recommendation ("R&R"), pursuant to 28 U.S.C. §636(b)(1)(B). Judge Komives recommends that Defendants' motion be denied.

    For the reasons stated below, the Court **ADOPTS** Judge Komives' recommendation.

**II.    BACKGROUND**

    Defendants are charged in a four-count Indictment: Count One--conspiracy to possess with intent to distribute a controlled substance (21 U.S.C. §§841(b)(1)(A), 846);

Count Two--possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. §924(c)); Count Three--possession of a stolen firearm (18 U.S.C. §922(j)), and; Count Four--possession of a firearm by a convicted felon (18 U.S.C. §922(g)(1)).  All Defendants are charged in Counts One through Three.  Defendant Hachem is also charged in Count Four.

Judge Komives summarized the relevant facts:

> The basic facts relevant to this motion were adduced at the preliminary examination.  Briefly stated, the government alleges that Defendant Hanke proposed a robbery to an individual who turned out to be a confidential informant (CI) for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  The CI informed his ATF handlers, who advised him not to participate in the robbery and to caution [D]efendant Hanke against commission of the crime.  Under the direction of his ATF handlers, the CI proposed an alternative to [D]efendant Hanke-a robbery of a drug stash house based on information from a friend of the CI, who was actually an undercover ATF agent.  Defendant Hanke agreed and met the undercover agent, who told Hanke that he was a drug courier who had access to a [sic] multiple kilograms of cocaine stored at a stash house.  Defendant Hanke agreed to the robbery, but was later incarcerated on an unrelated state charge.  Subsequently, the CI heard from [D]efendant Varner, who told the CI that he knew of the planned robbery and wanted to participate.  Varner indicated that his cousin (an unindicted juvenile coconspirator) and [D]efendant Hachem also wanted to participate in the robbery.  Varner and Hachem met with the undercover agent numerous times over the next several weeks to plan the robbery.  Defendant Hanke was released from prison during this time, and according to the [G]overnment rejoined the conspiracy at that time.  Defendant Adams was also recruited during this time to be a driver.  On June 21, 2006, [D]efendants, the CI and Varner's cousin drove to the storage unit where the conspirators had agreed to meet the undercover agent to go to the stash house.  Upon their arrival at the storage unit, [D]efendants were arrested.

R&R at pp. 1-2.  Based on these facts, Defendants ask the Court to dismiss Counts One and Two.  Defendants contend that the plan to rob a fictitious drug house was initiated, presented to them and planned by government agents.  Defendants argue that

2

the government agents' involvement constituted outrageous government conduct which warrants dismissal on due process and fundamental fairness grounds.

Judge Komives recommends that the Court reject Defendants' arguments and deny their motion because: 1) it is questionable whether the Supreme Court or the Sixth Circuit recognizes "outrageous government conduct" as a viable defense; and 2) even if the defense is viable, the Sixth Circuit has explicitly rejected the defense on the theories asserted by Defendants. Defendants object to the Magistrate's recommendation.[1]

### III.  APPLICABLE LAW AND ANALYSIS

The "outrageous conduct" defense has its genesis in the dicta of a Supreme Court opinion in *United States v Russell*, 411 U.S. 423 (1973), in which the Court rejected the defendant's argument that dismissal was warranted because an undercover government agent's involvement in the offenses for which he was charged (manufacturing methamphetamine) was so high that criminal prosecution would violate the fundamental principles of due process.[2] The Court held that there is no constitutional protection against entrapment. However, the Court went on to suggest that government involvement may under certain circumstances be so outrageous as to violate due process and bar criminal prosecution:

---

[1] Defendants Adams and Hachem filed Objections, which Defendants Hanke and Varner joined without additional argument.

[2] The agent approached the *Russell* defendant and his two co-defendants about manufacturing methamphetamine. The agent offered to provide defendant with an essential chemical for manufacturing the drug in exchange for a sample and a tour of the defendant's lab. The Bureau of Narcotics and Dangerous Drugs also enlisted the cooperation of some chemical companies who agreed to stop selling the chemical, which made it more difficult, but not impossible, for defendant to obtain the chemical on his own.

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . ., the instant case is distinctly not of that breed.  The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment.

411 U.S. at 431-432 (internal citations omitted).  In a plurality opinion, the Supreme Court in *Hampton v United States,* 425 U.S. 484 (1976), subsequently left open the possibility that government involvement could be so outrageous as to bar conviction.

The circuits are split regarding whether an "outrageous conduct" defense, in fact, exists under *Russell*.  There is disagreement within the Sixth Circuit as well.  *Compare United States v Barger*, 931 F.2d 359 (6th Cir. 1991)(articulating factors for use in determining whether there is outrageous conduct, but finding that the facts did not support such a finding) and *United States v Tucker,* 28 F.3d 1420 (6th Cir. 1994)(finding that there is no binding Supreme Court or Sixth Circuit authority for the defense because it has only been recognized in dicta).  Defendants concede that it is uncertain, under the existing precedent, whether the defense exists in the Sixth Circuit.

To the extent the defense is recognized, Defendants concede that the Sixth Circuit explicitly held that it may not be asserted when it is based on theories of government inducement or government's involvement in creation of the crime that was so significant that criminal prosecution violates due process.  *See United States v Warwick*, 167 F.3d 965, 974-975 (6th Cir. 1999); *United States v Blood*, 435 F.3d 612, 629 (6th Cir. 2006).  As those were the only theories asserted by Defendants in their motion to dismiss, the Magistrate correctly found that Defendants motion must be

4

denied as a matter of law.

In their objections, however, Defendant Adams (and the remaining Defendants by joinder) argue that the Magistrate failed to consider whether and to what extent they were predisposed to commit the offenses charged in Counts One and Two. Adams asserts that it appears that Sixth Circuit precedent only disfavors focusing *exclusively* on the government's conduct without consideration of the Defendant's degree of predisposition. Adams lists several factors which she contends demonstrate that she was not predisposed to commit the offenses, and Hachem implicitly makes the same assertion in his separately filed objections (although he also joins Adams' objections).[3] Defendants' argument is without merit.

First, this argument was not asserted in Defendants' motion and, therefore, was not before the Magistrate. Second, Defendant Adams offers no analysis or citation for the proposition that lack of predisposition is an exception to the Sixth Circuit's holding that the "outrageous conduct" defense may not be asserted when it is based on government inducement or government involvement. And, the Court is not aware of any Sixth Circuit case which has explicitly or implicitly held as much.

Finally, even if there is such an exception, predisposition is ordinarily a question for a jury, not the Court. *Tucker*, 28 F.3d at 1428. And, in any event, neither the

---

[3]Adams says she: 1) has no prior convictions, 2) did not know any of the co-Defendants before becoming involved in this offense; 3) was recruited by the confidential source at the "eleventh hour;" 4) was not involved in the planning of the robbery; she only agreed to be the driver; and 5) did not agree to participate in the robbery, drug possession or distribution. Hachem says he was not involved in the initial formulation of the plan, and that he resisted attempts by the CI and co-Defendants to involve him until he was overcome by excessive pressure placed upon him.

preliminary examination testimony nor the factors listed by Adams or Hachem conclusively establishes their, or the remaining Defendants', lack of predisposition. In fact, the preliminary exam testimony suggests otherwise.

ATF agent Donavan Davis, the case agent, testified at the preliminary examination that Hanke came to ATF's attention because he allegedly approached the CI and proposed another robbery.[4] Prelim. Exam. at pp. 7-8. Varner allegedly contacted the CI and asked to join the plan to rob the fictitious drug house (after hearing about it from Hanke). *Id* at p. 12. Hachem was recruited by one of the other Defendants (he does not object to the Magistrate's finding that it was Varner) to join the plan, he participated in two planning meetings, and he affirmatively indicated his continued willingness to participate when directly asked by the undercover agent.[5] *Id* at pp. 14, 54, 60, 76. And, contrary to Adams' claim that she was recruited by the CI, agent Davis testified that she approached the CI after overhearing him talking about the robbery plan and offered to act as the "getaway" driver. *Id* at p. 48.

For all of these reasons, the Court **ADOPTS** the Magistrate's recommendation. Defendants' Motion to Dismiss Counts One and Two of the Indictment is **DENIED**.

---

[4] Agent Davis was not the undercover agent directly involved, but he said that he reviewed the undercover agent's recorded telephone calls and video and audio taped meetings with the Defendants.

[5] There is no evidence to support Hachem's claim that he "resisted the various attempts [by] the government agent/confidential informant and Co-Defendants . . ., only succumbing once excessive pressure was placed on him." Hachem Obj. at p. 2.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 19, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 19, 2007.

S/Carol A. Pinegar
Deputy Clerk